### Petition of BARBER.

(District Court, E. D. Michigan, S. D.     May 31, 1922.)

No. 456.

1. **Intoxicating liquors ⊂⊃256—Property seized may be recovered by original suit.**

   Where property has been seized on a search warrant issued pursuant to National Prohibition Act, tit. 2, § 25, which provides that such property "shall be subject to such disposition as the court may make thereof," the court may entertain an original suit by a claimant for return of the property.

2. **Intoxicating liquors ⊂⊃249—Affidavit for search warrant held sufficient.**

   An affidavit *held* sufficient to authorize issuance of a search warrant to search for property designed for the manufacture of liquor intended for use in violation of National Prohibition Act.

3. **Intoxicating liquors ⊂⊃249—Description in search warrant held sufficient.**

   An affidavit and search warrant, which described the place to be searched as a store, at a named street and number, containing malt, hops, and other property described, and the property to be searched for as such malt, hops, etc., *held* sufficiently particular, but not to authorize the seizure of books and papers not mentioned therein.

4. **Searches and seizures ⊂⊃3—That property seized may be used as evidence does not invalidate seizure.**

   The mere fact that property seized under a search warrant may be used as evidence against the owner does not invalidate the seizure, nor the warrant under which it was made.

5. **Searches and seizures ⊂⊃3—Search warrant held not invalid for failure to direct seizure of property.**

   A search warrant, which directed the officer to make due return without delay that the property might be dealt with according to law, *held* not invalid because it did not in terms direct the seizure of the property to be searched for, nor did the omission render the seizure unlawful.

In Equity. Petition of Leo K. Barber for return of property. Denied.

Frank H. Watson and Edmund E. Shepherd, both of Detroit, Mich., for petitioner.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Earl J. Davis, U. S. Atty., of Saginaw, Mich., and Frederic L. Eaton, Asst. U. S. Atty., of Detroit, Mich., opposed.

TUTTLE, District Judge. This is a petition filed by the above-named petitioner, seeking an order for the return to him by United States prohibition agents of certain malt, hops, rye, sugar, bottles, crocks, jugs, bottle caps, corks, tubing, and similar materials and supplies, together with certain books, letter files, ledgers, papers, records, advertising matter, and stationery used in the conduct of his business of selling hops, malt, and materials, supplies, and other merchandise of the general line just mentioned, which he alleges were unlawfully seized and taken by them from his premises in the city of Detroit, in this district, "under the guise of a pretended search warrant" issued by a United States commissioner, the legal sufficiency and validity of which warrant are attacked by petitioner on various grounds.

Petitioner alleges, and it is undisputed, that such search warrant was issued upon the filing with the commissioner of the following affidavit:

"State of Michigan, County of Wayne—ss.:

"The undersigned, Robert L. Crinnian, being duly sworn, deposes and says that he is a resident of the city of Detroit, Wayne county, Michigan, and has been a resident of said city for the past five years.

"That on the morning of January 19, 1922, deponent, accompanied by James Coleman, called at the malt and hops store located at 11338 East Jefferson avenue, Detroit, Wayne county, Michigan. That at said place and on said date deponent heard the man in charge, whose name is unknown, assure Mr. Coleman that his malt and hops would make good beer. Said Coleman asked that, if he followed the recipe given him yesterday by the person with whom he was talking, if it would make good beer, and the man replied in the affirmative. That said Coleman at this time purchased one bottle capper, one dozen bottles, and a dozen bottle caps.

"That deponent purchased one package of malt and hops for $1.75, with the understanding, contrary to the terms of the National Prohibition Act, that such malt and hops were intended for the manufacture of intoxicating liquor containing one-half of 1 per cent. or more of alcohol by volume. That the man selling same stated that evidently the fellow that just left (Coleman) was new in the game and did not know much about making beer.

"That in addition to observing the above-mentioned sales to the said Coleman on January 19, 1922, and making the above-mentioned purchase himself on the same date, deponent called at the address in question on March 1, 1922, and observed that in the store is a very large stock of malt and hops and other utensils for the making of beer displayed for sale. That deponent was asked at this time if he desired to make a purchase and replied in the negative.

"That the building at 11338 East Jefferson avenue, Detroit, Michigan, is a frame building of two stories, in the first floor of which a malt and hops store is located.

"That the deponent knows that the above-mentioned malt and hops have been employed by a chemist in accordance with instructions given by vendor, and the result has been an intoxicating liquor. That deponent has seen the chemist's report, which shows the liquor so manufactured to contain one-half of 1 per cent. or more of alcohol by volume, contrary to the terms of the National Prohibition Act.

"Further deponent sayeth not. Robert L. Crinnian.

"Subscribed and sworn to before me this 2d day of March, A. D. 1922.

"Hazel M. Gaeger,

"Notary Public, Wayne County, Michigan."

"My commission expires Sept. 29, 1924."

The search warrant referred to was in the following form and language:

"United States of America.

"The President of the United States of America to Thomas H. Brennan, Federal Prohibition Agent, Detroit, Michigan—Greeting:

"Whereas, you have. this day made oath in writing before the undersigned, a United States commissioner for the Eastern district of Michigan, to the effect that you know that in and upon and by the use of certain premises within the Eastern district of Michigan, to wit, premises located at 11338 East Jefferson avenue, Detroit, Mich., and operated by John Doe, a fraud upon the government of the United States has been and is being committed; that is to say, that the said John Doe and other persons connected with and assisting in the conduct of said premises, and whose name to deponent is unknown, are engaged in the unlawful sale and possession of certain malt, hops, capping machines, caps, bottles, and other utensils and property designed for the manufacture of liquor intended for use in violating the National Prohibition Act, and did sell such materials to James E. Coleman and Robert L. Crinnian, as set forth in the affidavit of said Robert L. Crinnian; that in and upon said premises and in the possession of said John Doe and other persons unknown is a certain quantity of malt, hops, capping machines, caps, bottles, and other utensils and property designed for the manufacture of liquor intended for use in violating the National Prohibition Act, unlawfully possessed and used in connection with the sale thereof, the exact kind and quantity of the same being unknown:

"Now, therefore, in pursuance with the provision of the law and particularly the National Prohibition Act, relating to the prohibition of the sale and possession of malt, hops, capping machines, caps, bottles, and other utensils and property designed for the manufacture of liquor intended for use in violating the National Prohibition Act, and upon probable cause shown, you are hereby authorized to enter the said premises in the day with the necessary and proper assistance, and thoroughly search the premises aforesaid for all subjects and evidence of fraud against the government of the United States and for violation of the National Prohibition Act, including the property above mentioned, to the end that such violations may be discovered and restrained, and that all offenders and property forfeited may be dealt with according to law, and hereof made due return without delay.

"Witness the hand and the official seal of the said commissioner, at Detroit, Michigan, in said district this 3d day of March, A. D. 1922.
      "[Signed]                           J. Stanley Hurd.
         "United States Commissioner, Eastern District of Michigan."

The grounds of the objections of petitioner to the validity of this search warrant, and of the search and seizure based thereon, which are urged by petitioner, are in substance as follows:

(1) That the affidavit upon which the said search warrant was issued failed to state facts tending to establish probable cause for believing that the necessary grounds for the issuance of such warrant existed.

(2) That such affidavit failed to name or describe the person, and failed to particularly describe the place and property, to be searched, and which were searched and seized.

(3) That the search and seizure in question were made for the purpose of obtaining evidence to be used against petitioner.

(4) That said search warrant did not expressly command a seizure of the property found by the search, but left indefinite and discretionary the property to be searched for and seized.

[1] A preliminary objection by the government to the jurisdiction of

this court to proceed in this cause must be first considered. It is contended by the government that this petition should not have been filed as the commencement of a new cause, but should have been presented in the proceeding in which the search warrant itself was issued. Section 25 of the National Prohibition Act (41 Stat. 315) provides that property seized under the search warrant therein authorized "shall be subject to such disposition as the court may make thereof." I discover no reason, based either on authority or on principle, and none has been brought to my attention, why this court may not or should not entertain and pass on a petition such as that here under consideration, filed in an independent cause for the purpose of seeking a return of property alleged to have been taken on an illegal search warrant. The objection by the government to the contrary must be overruled.

[2] 1. I cannot agree with the contention of petitioner that the affidavit in question failed to state facts tending to establish probable cause for belief on the part of the commissioner that sufficient grounds existed for the issuance of the search warrant in question. Section 18 of the National Prohibition Act provides as follows:

"It shall be unlawful to advertise, manufacture, sell, or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula direction, or recipe advertised, designed, or intended for use in the unlawful manufacture of intoxicating liquor."

Section 25 of the same statute contains the following provision:

"It shall be unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this title or which has been so used, and no property rights shall exist in any such liquor or property. A search warrant may issue as provided in Title XI of public law numbered 24 of the Sixty-Fifth Congress, approved June 15, 1917, and such liquor, the containers thereof, and such property so seized shall be subject to such disposition as the court may make thereof."

The constitutional and statutory requirements applicable to the issuance of a search warrant in a case such as that here presented were so recently considered and discussed by this court in its opinion in the case of United States v. Ray & Schultz, 275 Fed. 1004, that I deem it unnecessary, in pointing out the rules applicable to this phase of the subject, to do more than quote from that opinion the following extract:

"It is, of course, entirely clear that under the constitutional, as well as the statutory, provisions thus applicable the sufficiency and validity of the search warrant under consideration must be tested and determined by the result of the inquiry whether it was based upon a sworn statement of facts tending to show probable cause for the belief that proper ground for the issuance of such search warrant existed, or whether, on the other hand, the latter was based merely upon statements, although sworn to, of belief."

Without reviewing in detail the allegations in the affidavit on which the search warrant in the present case was based, I am satisfied that the language thereof states facts amply sufficient to create in the mind of the commissioner probable cause for believing that the premises fully described therein contained the property described ("particularly," in my opinion) in such affidavit and warrant.

[3] 2. It is urged by petitioner that the affidavit and search warrant did not name or describe the person or particularly and sufficiently describe the place and property to be searched.

As it is not claimed that any person was to be searched under this warrant, or in fact was searched, it was, of course, unnecessary to name or describe any person. The affidavit alleged that in the "malt and hops store" located at the address mentioned therein there was a "large stock of malt and hops and other utensils for the making of beer displayed for sale." This description, especially in view of the character of the materials and utensils mentioned and the use to which, according to common knowledge, they are adapted, and under all of the circumstances, was, in my opinion, sufficiently definite and particular to authorize the search and seizure of such hops, malt, and utensils. It is not claimed by petitioner that any person was misled or prejudiced by such description, and I cannot doubt that the objection based upon the alleged indefiniteness of description of such property or supposed variance between the property so described and the property seized must be overruled, except as to the books, files, ledgers, records, advertising matter, stationery, and papers seized, but not described nor mentioned in the affidavit or in the search warrant.

It is plain that, as the latter were not described nor even mentioned in the affidavit or search warrant, their seizure thereunder was unauthorized for that reason, even if otherwise subject to seizure, and, if actually seized and still retained, they must be forthwith returned to petitioner. United States v. Mills, 185 Fed. 318; Fitter v. United States (C. C. A. 2) 258 Fed. 567, 169 C. C. A. 507.

[4] 3. It is further urged by petitioner that the search warrant on its face directs its use for the purpose of securing evidence and that such warrant is invalid for that reason. In support of this objection the case of Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, is cited, from the opinion in which case the following language is quoted by petitioner:

"Search warrants * * * may not be used as a means of gaining access to a man's house or office and papers, solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding, but that they may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken."

It has not been made to appear that this search warrant was used "solely for the purpose of making search to secure evidence." Obviously, in view of the provisions of sections 18 and 25 of the National Prohibition Act already quoted, the government had a "primary right" to make, under a proper search warrant, the search and seizure of the materials and utensils in question. Nor does the mere fact that the property thus lawfully seized may be used as evidence against the owner thereof necessarily invalidate such seizure, nor the search warrant on which the latter was based. Gouled v. United States, supra.

[5] 4. Nor can I agree with the contention of the petitioner that the absence from the search warrant of an express command to seize

or to bring before the commissioner the property for which the premises were to be searched affected the legality of such warrant or of the search and seizure actually made thereunder. It is true that section 6 of the Act of June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 10496¼f), the hereinbefore cited statute governing the issuance of search warrants, provides for the issuance of a warrant, among other things, "commanding" the officer to whom it is directed "forthwith to search the person or place named, for the property specified, and to bring it before the judge or commissioner," and it would doubtless have been better practice to follow the language of the statute in this respect. The search warrant, however, which was issued, after directing a thorough search of the premises described, for the property described, contained the statement that one of the objects of such search was that all property forfeited might be "dealt with according to law," and concluded with a direction that the officer should "make due return" of the warrant "without delay." In view of the statutory provision prescribing the requisites of such "due return" and the obvious purpose of the issuance of this search warrant, it would seem that the language used was equivalent in substance, if not in form, to the words of the statute applicable.

It is not denied by petitioner that all property properly searched for and found under this warrant was seized and brought before the commissioner in accordance with the duty thus created by the statute, and no injury appears to have resulted, and none is claimed, from the omission in question. I am satisfied, under the circumstances of the present case, at least, that the absence of a literal direction to seize and bring before the proper official the property described is a mere irregularity, in form only, and not a jurisdictional defect, which renders the proceedings void.

An order will be entered in accordance with the terms of this opinion.