THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* TEÓFILO JORGE YULFO, Defendant and Appellant.

No. 14754. Argued November 6, 1950.—Decided November 8, 1950.

*José Luis Méndez* for appellant. *Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellée.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

The defendant was convicted of violation of Act No. 220 of 1948 and sentenced to six months in jail. His only assignment is that the lower court erred in admitting in evidence certain material used in the *bolita* game the supression of which he opportunely requested and which was denied. He bases his theory on the fact that said evidence was obtained by an illegal search. The alleged illegality consists in that the affidavit upon which the search warrant was issued is defective because it does not state facts but mere conclusions of law; and in that the search warrant does not contain appellant's name as owner or occupant of the house which was ordered to be searched but that of his wife, Antonia Martínez, and the latter's daughter Ramona Ramos.

### I

It is stated in the affidavit from personal knowledge that deponent personally knew the last two women mentioned, who lived in a place known as Joya de San Carlos, in Aguadilla; that the house in which they reside is a one and one-half-story house made of wood and zinc roofed, having a concrete porch and painted in blue, green and red; that it has two doors and a window in the front part and it is the second house to the left going up the stone steps of Joya de San Carlos, and the boundaries of the house are also stated.

And as probable cause for the issuance of the search warrant, the following was stated: That said two women were manipulating and selling *bolipool* tickets in the said house, basing this statement on the fact that on May 28, 1949, at nine in the morning, when deponent was passing in front of the described house, he saw Antonia Martínez and Ramona Ramos counting *bolipool* tickets in the living room; that he

heard Ramona tell her mother to keep ten pieces of number 236 for her in her room because someone would come for them immediately and she, Ramona, had to go out; that when they saw deponent they closed the door, thus preventing him from seizing the tickets, and the affidavit continues explaining the game of *bolipool*. In our opinion, the house to be searched could not have been described more precisely. *In re Hollywood Cabaret*, 5 F. 2d 651 (C. C. A. 2d 1925).

And as to a showing of probable cause for issuing the search warrant, it cannot be said that it exclusively relies on mere conclusions of law. Assuming, without deciding, that deponent's statement to the effect that he saw them counting the *bolipool* tickets is a mere conclusion, that portion of the affidavit which says that he heard the daughter ask her mother to keep ten pieces of number 236 for her, adding that someone would come for them shortly, sufficiently states the probable cause required by the Act for the issuance of the search warrant.

██ The fact that the appellant's name does not appear in the search warrant does not affect its validity. The warrant may be issued to search a person or a particular property. If the former, naturally, the person must be named or identified, since otherwise, the officer to whom the warrant is directed will not know whom he should search; if the latter, that is, if it is sought to search a house or place, then it must be described with reasonable detail, so that the officer may identify it; but the Act does not require that the name of the owner or occupant of the house or place to be searched be given. The warrant is directed against the thing as a proceeding *in rem* notwithstanding the identity of the owner or occupant. See §§ 503 and 507 of the Code of Criminal Procedure. The same conclusion was reached in *Gandreau* v. *United States*, 300 F. 21 (C.C.A. 1st, 1924); *In re Hollywood Cabaret, supra*, and *Carney* v. *United States*, 79 F. 2d 821 (C.C.A. 6th, 1935), interpreting a provision of the National Prohibition Act equivalent to § 503 of our Code of

Criminal Procedure. Nevertheless, in the present case, the affidavit was not confined to describing the house where the Act was being violated, but it went even further, and stated the name of two of the persons residing therein.

Therefore, the lower court did not err in refusing to suppress the evidence seized in the search.

The judgment will be affirmed.