**VALLEY BANK AND TRUST COMPANY,**
a Utah corporation, Plaintiff
and Respondent,

v.

**Alan GERBER, Barbara Gerber, his wife,**
**Barbara Jensen Interiors, et al.,**
Defendants and Appellants,

**South Davis Security Bank, Defendant**
and Respondent.

No. 13489.

Supreme Court of Utah.

Sept. 20, 1974.

Lee W. Hobbs, Salt Lake City, for defendants and appellants.

W. Jeffrey Fillmore, of Biele, Jones, Murphy & Haslam, Salt Lake City, for Valley Bank & Trust Co.

Layne B. Forbes, Bountiful, for South Davis Security Bank.

CROCKETT, Justice:

This is an appeal by defendant Barbara Jensen Interiors, Inc. (hereinafter, Jensen Interiors), from a judgment awarding damages to plaintiff Valley Bank and Trust Company (hereinafter, Valley Bank), based on a finding that Jensen Interiors had breached a warranty against encumbrances in a contract of sale of home furnishings it had assigned to plaintiff Valley Bank.

Appellant Jensen Interiors makes two main contentions: First, that in the course of the proceedings set forth below, it had been dismissed out of the case before the final judgment appealed from was entered. Second, that there is no basis in the evidence to sustain the finding that it had breached its no-encumbrance warranty to Valley Bank.

Mr. and Mrs. Alan Gerber (hereinafter, Gerbers) purchased a home in the Salt Lake area in 1969; shortly thereafter they contacted Jensen Interiors for the purpose of receiving interior decorating counsel and purchasing various furnishings and fixtures. Between February 13, 1969 and March 20, 1969, Jensen Interiors delivered and installed in Gerbers' home carpeting, draperies, and various items of furniture, accessories and equipment (for brevity herein, all called home furnishings), valued at about $12,000. The parties orally agreed that items of furniture and accessories would be placed in Gerbers' home on a trial or "on approval" basis until the entire decorating plan was completed to Gerbers' satisfaction, then a contract of sale would be executed for those things Gerbers chose to keep.

As various of the items were delivered the delivery tickets were stamped "Merchandise Not Returnable After Three Days." The Gerbers did not sign these tickets. In response to their inquiry about the effect of the statement, Jensen Interiors assured them that the stamp was routine, to encourage customers to decide quickly; and that it was not strictly enforced. The understanding was that Ger-

bers would obtain financing, pay $7,000 down, and the remaining $5,000 in installment payments.

Pursuant to that plan, and after various of the home furnishings had been in Gerbers' home for up to two-plus months, on April 23, 1969, the Gerbers pledged the furniture to the defendant South Davis Security Bank for a loan of about $11,000, of which they remitted $6,934.50 to Jensen Interiors on the purchase price. A security agreement (chattel mortgage) was recorded with the Secretary of State.[1] The core of the difficulty in this case arises from the fact that three weeks later, on May 13, 1969, the Gerbers executed another security agreement in favor of the sellers, Jensen Interiors, on the same home furnishings; and two weeks later, on May 26, 1969, Jensen Interiors assigned its sale contract and security agreement to plaintiff Valley Bank. The assignment was without recourse. But it also contained a covenant warranting ". . . that said Collateral was delivered into the possession of the buyer [Gerbers] thereunder and is free from any liens or encumbrances other than said contract . . .." Gerbers made payments on the contract to Valley Bank until May, 1970, at which time they filed petitions in bankruptcy and were subsequently discharged.

Thereafter in October, 1970, plaintiff Valley Bank brought this action against Jensen Interiors alleging breach of the warranty against encumbrances because of the security agreement (chattel mortgage) to defendant South Davis Bank. A first trial was had, resulting in a finding that, inasmuch as Gerbers had not "approved" the purchase, they had acquired no ownership in the home furnishings at the time of the pledge to the South Davis Bank, hence the latter acquired no interest therein; and that because title was still in Jensen Interiors, the assignment from the latter to Valley Bank involved no breach of warranty. The suit was therefore dismissed as to

Jensen Interiors. The two banks, South Davis and Valley, each filed timely motions for a new trial. On August 16, 1972, by memorandum decision, the motions for a new trial were each denied, and by an amended order on that date, the action was again dismissed as to Jensen Interiors, but for the first time dismissed also as to South Davis Bank.

As to this new and different judgment, Valley Bank, on August 23, 1972, and thus within the ten days allowed, made a motion for new trial against both of the other parties, Jensen Interiors and South Davis Bank, and duly served it upon them. The record does not show a disposition of this motion. But on January 15, 1973, the court signed and entered a new set of findings of fact, conclusions of law and judgment. Four days thereafter, on January 19, 1973, defendant South Davis Bank filed its motion to set aside or amend them.[2] It is important to note that this motion was also directed against both Jensen Interiors and Valley Bank. Subsequent to the hearing on this last motion, the trial court on February 26, 1973, entered an order granting a new trial as to all parties. Upon the new trial it was determined that the sale had been completed to Gerbers, and that the security interest (chattel mortgage) to South Davis Bank was valid; and that therefore when Jensen Interiors assigned the contract to plaintiff Valley Bank there was a breach of the warranty against encumbrances.

### District Court's Jurisdiction to Grant New Trial

On the procedural issue, it is the contention of defendant Jensen Interiors that because both of the orders of dismissal, one on March 3, 1972, and one on August 16, 1972, had dismissed it out of the case, the trial court was without jurisdiction to grant a new trial as to it on February 26, 1973.

---

1. See Sec. 70A–9–302, U.C.A.1953.

2. Rule 52(b), U.R.C.P., provides for motion to amend the findings.

■ The significant fact is that in each instance recited above the motions attacking the judgment were timely made and were directed against and served upon the other parties, including Jensen Interiors. The timely filing of any of the motions allowed by the rules to attack or change the findings and judgment invokes the continuing jurisdiction of the court and suspends the running of the time on the judgment until the motion is ruled upon.[3] This applies to the January 19, 1973, motion of South Davis Bank "to set aside or amend the findings and judgment." Consequently, the trial court was within its prerogative in deciding that the interests of justice required the setting aside of the entire findings and judgment; and that having done so, the appropriate procedure was to grant a new trial as to all parties.[4] The matter of the breadth of discretion allowed a trial court in granting new trials in order to fulfill its responsibility of seeing that justice is done; and that his action will not be disturbed in the absence of a clear abuse of his discretion, has been sufficiently set forth in prior cases that it requires no more than statement of the proposition here.[5]

### Violation of Warranty of No Encumbrances

Jensen Interiors argues that at the time Gerbers executed the security agreement (chattel mortgage) to South Davis Bank they only had the home furnishings on approval, and had not acquired any owner-ship interest therein; that they thus mortgaged nothing to South Davis Bank and there was therefore no encumbrance, wherefore Jensen Interiors had not violated its covenant.

■ A preliminary observation which has a general bearing on this problem is that ordinarily where one of two innocent parties must suffer a loss, it should be borne by the one whose conduct created the circumstances which permitted the loss to occur. But here there are other and more important considerations which provide the controlling solution to the problem confronted here.

■ Pertinent to the question above stated are certain sections of the Uniform Commercial Code (herein U.C.C.). "Sale on Approval" is defined in Section 70A–2–326, U.C.A.1953):

(1) Unless otherwise agreed, if delivered goods may be returned by the buyer even though they conform to the contract, the transaction is

(a) a "sale on approval" if the goods are delivered primarily for use. . . .

(2) Except as provided in subsection (3), goods held on approval are not subject to the claims of the buyer's creditors *until acceptance*; . . .

Under the foregoing section, whether Gerbers had acquired an ownership interest depends upon whether they had "accepted" the furnishings which had been placed in their home "on approval." For further

---

3. See Barron & Holtzoff, Federal Pr. & Procedure, Sec. 1130; and also Sec. 1306, at p. 378: "If a motion is made within 10 days under Rule 59(b), it suspends the finality of the judgment and the court may grant the motion after the 10 day period has expired." See also 6A Moore's Federal Practice, para. 59.09(4); he states at 59.11: " . . . once the finality of the judgment has been suspended by a proper motion, the trial court has the power to grant a new trial, on its own initiative, more than 10 days after the entry of judgment for any reason for which it might have granted a new trial on motion of a party." See also para. 59.09(2), and authorities there cited.

4. 6A Moore's Federal Practice, para. 59.09 (4), at 59–217.

5. E. g., see Johnson v. Doctorman, 23 Utah 2d 292, 462 P.2d 169, wherein a unanimous court reaffirmed this principle stating: " . . . it is necessary that the trial judge have this discretionary power so he can fulfill his duty of general supervision over legal proceedings and have a remedy to apply when he is convinced that there has been substantial and prejudicial error, or the judgment is contrary to the evidence, or the law, or for any other reason there has been a miscarriage of justice"; and see 58 Am.Jur.2d, Sec. 11, at p. 196.

help we look to another section of that code which defines "acceptance":

Sec. 70A–2–327. Special incidents of sale on approval and sale or return.—

(1) Under a sale on approval unless otherwise agreed

. . . . . .

(b) use of the goods consistent with the purpose of trial is not acceptance but *failure seasonably to notify the seller* of election to return the goods *is acceptance.* . . .

The correct interpretation and application of the language "failure seasonably to notify the seller" of election to return the goods is acceptance is in turn assisted by another section, 70A–1–204, which defines the term "seasonably" as a "reasonable time." Unless it is otherwise stated or agreed upon by the parties, what is a "reasonable time" is a question of fact to be determined from the circumstances.

■ Some of the particular facts to be noted here are that the draperies and carpeting had been tailored to and installed in the house, and that over two months had elapsed without the buyer (Gerbers) notifying the seller (Jensen Interiors) of disapproval. These facts, with others unnecessary to detail, provide a reasonable basis to support the view that there had been a "failure *seasonably* to notify the seller of election to return the goods"; and that under the statute quoted above there was deemed to be an "acceptance" of the home furnishings by the Gerbers; and that this occurred prior to April 23, when they executed the security agreement (chattel mortgage) to South Davis Bank.

■ The next point of inquiry is: whether the proper steps had been taken to perfect a security interest in the South Davis Bank. Section 70A–9–113 of the U. C.A. provides that a security interest arising under the chapter on Sales (70A–2) is subject to the provisions in the chapter on Secured Transactions if the debtor (Gerbers), as was the case here, is in posses-

sion. Therefore, looking to the chapter on Secured Transactions, it is noted that Sections 70A–9–203 and 70A–9–204 require that three things are necessary to create a valid and enforceable security interest:[6] (1)(a) a written security agreement signed by the debtor and describing the collateral, or (b) the creditor has possession of the collateral; (2) value is given by the creditor; and (3) the debtor has rights in the collateral.

■ Reverting to the facts as found by the trial court, it is clear that the requirements just stated were fulfilled in connection with the April 23 security agreement to the South Davis Bank. By the passing of a reasonable time he deemed the acceptance by the Gerbers had occurred; the agreement was in writing signed by the debtors, Gerbers; and value was given by the South Davis Bank advancing the $11,000. On the other hand, the Gerber contract of purchase and security agreement with Jensen Interiors was not executed until three weeks later, May 13, 1969. The general rule is that as between security interests in the same property, the one prior in time ordinarily takes preference over a later one.[7]

■ On the basis of what we have said herein, it is our conclusion that there is a reasonable basis in the evidence; and under the applicable rules of law, to support the determination made by the trial court that the security interest (chattel mortgage) which Gerbers executed to the South Davis Bank on March 26, 1969, constituted an encumbrance upon the home furnishings; and that this having occurred prior to May 23, 1969, when Jensen assigned Gerbers' contract to the Valley Bank, the warranty against encumbrances was breached. Therefore the judgment against Jensen Interiors for damages for breach of warranty is justified. (All emphasis ours.)

Affirmed. Costs to defendants (respondents).

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

---

6. White and Summers, Uniform Commercial Code, Section 23–2, at p. 786; 4 Anderson on Uniform Commercial Code, Sections 9–203 and 9–204.

7. Id., Section 23–5, at p. 796.