## El Pueblo de Puerto Rico, demandante y apelado, *v.* Teófilo Jorge Yulfo, acusado y apelante.

Núm. 14754.—*Sometido:* Noviembre 6, 1950.   *Resuelto:* Noviembre 8, 1950.

*José Luis Méndez,* abogado del apelante; *Hon. Procurador Géneral Vicente Géigel Polanco* y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

El Juez Presidente Señor De Jesús emitió la opinión del tribunal.

El acusado fué convicto de infracción a la Ley núm. 220 de 1948 ((1) pág. 739) y sentenciado a seis meses de cárcel.

Su único señalamiento de error consiste en haberse admitido en evidencia cierto material de bolita cuya supresión solicitó oportunamente y le fué denegada. Basa su tesis en que dicha evidencia fué obtenida mediante un registro ilegal. La supuesta ilegalidad estriba en que la declaración jurada que sirvió de base a la orden de allanamiento es insuficiente porque no expone hechos, sino meras conclusiones de derecho; y en que en la orden de allanamiento no aparece el nombre del apelante, como dueño u ocupante de la casa que se ordenó registrar, sino el de su esposa Antonia Martínez y el de la hija de ésta Ramona Ramos.

I

En la declaración jurada se expone de propio conocimiento que el declarante conocía personalmente a las dos mujeres últimamente mencionadas quienes vivían en el sitio conocido por la Joya de San Carlos, en Aguadilla; que la casa en que residen es semialta, construída de madera y techada de zinc, con balcón de concreto, pintada de azul, verde y rojo; que tiene dos puertas y una ventana al frente y es la segunda casa subiendo a mano izquierda por la escalinata de la Joya de San Carlos, y además se expresan las colindancias de la casa.

Y como causa probable para que se librase la orden de allanamiento, se expuso lo siguiente: Que dichas dos mujeres se dedicaban en la referida casa a la manipulación y venta de boletos de bolipool, basando esta afirmación en que el día 28 de mayo de 1949, a las nueve de la mañana, al pasar el declarante frente a la descrita casa, vió a Antonia Martínez y Ramona Ramos contando boletos de bolipool en la sala; que oyó a Ramona decir a su madre que le guardase en su cuarto diez pedazos del número 236 porque vendrían a buscarlos seguido y ella, Ramona, tenía que salir; que al notar la presencia del declarante, cerraron la puerta impidiéndole así ocupar los boletos, y sigue la declaración

explicando en qué consiste el juego de bolipool. A nuestro juicio, la casa objeto del registro no pudo ser descrita con más precisión. *In Re Hollywood Cabaret*, 5 F.2d 651 (C. C.A. 2do., 1925).

Y en cuanto a la exposición de causa probable para expedir la orden de allanamiento, no puede decirse que descansa exclusivamente en meras conclusiones de derecho. Suponiendo sin resolverlo, que la manifestación del declarante al efecto de que las vió contar los boletos de bolipool, fuera una mera conclusión, aquella parte de la declaración que dice que oyó a la hija pedir a la madre que le guardase diez pedazos del número 236 agregando que vendrían a buscarlos dentro de un momento, expone suficientemente la causa probable que requiere la ley para la expedición de la orden.

██ La circunstancia de no aparecer el nombre del apelante en la orden de allanamiento no afecta su validez. La orden puede ser librada para registrar a una persona o a determinada propiedad. Si lo primero, naturalmente, debe nombrarse o identificarse la persona, pues de otro modo el funcionario a quien se dirija la orden no sabrá a quién deberá registrar; si lo segundo, es decir, si lo que se trata de registrar es una casa o sitio, entonces deben describirse éstos con razonable particularidad, de suerte que el funcionario pueda identificarlos; pero no exige la ley que haya de exponerse el nombre de la persona en posesión de la casa o sitio que ha de registrarse. La orden va dirigida contra la cosa a manera de un procedimiento *in rem*, no importando quién sea su dueño u ocupante. Véanse artículos 503 y 507 del Código de Enjuiciamiento Criminal. A la misma conclusión se llegó en *Gandreau* v. *United States*, 300 F. 21 (C. C.A. 1ro., 1924), *In Re Hollywood Cabaret*, supra, y *Carney* v. *United States*, 79 F.2d 821 (C.C.A. 6ta., 1935), interpretando una disposición de la Ley de Prohibición Nacional igual al artículo 503 de nuestro Código de Enjuiciamiento Criminal. Con todo, en el presente caso, no se limitó la declaración a describir la casa donde se estaba infringiendo la

ley, sino que fué más lejos y expuso el nombre de dos de las personas que en la misma residían.

No erró, pues, la corte inferior al negarse a suprimir la evidencia ocupada en el acto del registro.

*Procede la confirmación de la sentencia.*